UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

F&M MAFCO, INC.                                         CIVIL ACTION

v.                                                      NO. 18-5621

OCEAN MARINE CONTRACTORS,
LLC and OCEAN MARINE
RENTALS, LLC                                            SECTION "F"

ORDER AND REASONS

Before the Court is intervenor ECapital LA Industrial I, LLC's motion to dismiss Count III of the plaintiff's counterclaim. For the reasons that follow, the motion is GRANTED in part, as to F&M's claim for treble damages, and DENIED in part, as to F&M's claim for actual damages under LUTPA.

**Background**

This lawsuit began as an action to enforce an Ohio default judgment but has evolved into a security rights dispute.

In late summer of 2017, F&M Mafco, Inc. sued Ocean Marine Contractors, LLC and Ocean Marine Rentals, LLC in Ohio state court, asserting claims arising out of the performance of two contracts. The Ohio state court entered a default judgment in favor of F&M the following spring. When the Ocean Marine entities failed to satisfy that judgment, F&M turned to this Court for enforcement.

1

In January of 2019, this Court granted F&M's motion for summary judgment, seeking recognition and enforcement of the Ohio default judgment pursuant to Louisiana's Enforcement of Foreign Judgments Act. F&M then moved for entry of a final judgment, contending it had become aware that two creditors assert claims in property that F&M owns and that relates to the subject of this action. ECapital LA Industrial I, LLC (one of the creditors asserting a security interest in three cranes that F&M allegedly purchased from the Ocean Marine entities) intervened for the limited purpose of opposing F&M's motion for entry of judgment. Finding that F&M requested relief beyond that provided for in the Ohio default judgment, the Court granted F&M's motion for entry of judgment, in part, only insofar as it sought relief consistent with this Court's January 9, 2019 Order and Reasons. The Court also entered a final judgment in F&M's favor on February 20, 2019.

A month later, ECapital moved to intervene in this action to adjudicate its purported security interests in the cranes. The Court granted ECapital's unopposed motion to intervene on April 12, 2019. Because ECapital asserts a security interest in property implicated in the contractual disputes that gave rise to the Ohio default judgment, the Court found a sufficient factual overlap between this matter and ECapital's claim to justify permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B).

Through its intervention complaint, ECapital requests the following relief: (1) recognition and enforcement of its security interests in the cranes; (2) seizure and sale of the cranes under ordinary process; and (3) interest and attorneys' fees.[1]

---

[1] ECapital alleges that it is the successor in interest to Regions Bank with respect to loans to Ocean Marine Contractors, LLC and related entities. According to ECapital, Regions Bank extended credit to OMC and obtained security interests over substantially all of OMC's movable and immovable assets, beginning in 2007.
 In particular, it is alleged that Regions Bank executed a promissory note in favor of OMC in the amount of $1,425,000 on February 5, 2010. The February 2010 Note, which allegedly is in default, is secured by a Commercial Security Agreement dated October 13, 2009. The October 2009 Security Agreement was executed by OMC in favor of Regions Bank to secure the repayment of "any and all present and future indebtedness of [OMC]" by encumbering "any and all of [OMC's] now owned and hereafter acquired equipment, machinery, furniture, furnishings, and fixtures of every type and description." That security agreement further provides that "Lender may cause the Collateral, or any part or parts thereof, to be immediately seized wherever found, and sold, whether in term of court or in vacation, under ordinary or executory process, in accordance with applicable Louisiana law, . . . without the necessity of making additional demand upon or notifying Grantor or placing Grantor in default." The security agreement also prohibits the sale or disposition of the collateral without Regions' prior written consent.
 ECapital claims to be the assignee of Regions' rights under the loan documents and security agreement and, therefore, the holder of the February 2010 Note and related security rights. ECapital further alleges that it entered into a confidential settlement agreement with respect to its claims against the Ocean Marine entities but reserved its rights to enforce the remaining indebtedness in the amount of $698,530.39 and foreclose upon the Manitowoc cranes.
 F&M, in turn, is the purported owner of the cranes, which it purchased from OMC and/or OMR in 2015. ECapital alleges that neither Regions, nor any of its successors in interest, consented to a disposition of the cranes or a release of their security interests in the cranes.

In response, F&M filed an answer and counterclaim, in which it contests the validity of ECapital's security interests and alleges that ECapital "has wrongly seized F&M's Cranes, failed to maintain those cranes, and prevented F&M from exercising its ownership rights with regard to those cranes." F&M claims that it purchased the cranes from the Ocean Marine entities on November 30, 2015 for $1,000,000, after which the equipment remained on premises controlled by OMC. It is further alleged that "[b]y October 15, 2018, ECapital had unilaterally seized F&M's Cranes and moved them from land controlled by OMC (or affiliated individuals or businesses) onto land owned by ECapital." F&M submits that it "made amicable demand on ECapital to return F&M's Cranes to F&M, as rightful owner," but "ECapital refused and asked F&M to dation its property to ECapital." Finally, F&M alleges that upon gaining access to inspect the cranes in March of 2019, it discovered that they had suffered considerable damage due to neglect and lack of maintenance. Based on this conduct, F&M asserts three causes of action against ECapital: (1) wrongful acts; (2) conversion; and (3) violation of the Louisiana Unfair Trade Practices Act. F&M also seeks to recover treble damages under LUTPA.

ECapital now moves to dismiss Count III of F&M's counterclaim for failure to state a claim. It contends that all of F&M's counterclaims will necessarily fail upon the recognition of

4

ECapital's continuing security interest in the cranes but urges the Court to dismiss F&M's LUTPA claim at the pleading stage.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Stated differently, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco,

Texas, 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012) (en banc)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Id. at 502-03; see also Iqbal, 556 U.S. at 678 ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal citations omitted).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are

merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted)(citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

Finally, when reviewing a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings" -- that is, any documents attached to or incorporated into the complaint by reference that are central to the plaintiff's claim for relief. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)). The Court is also permitted to consider matters of public record and other matters subject to judicial notice without converting the motion into one for summary judgment. See United States ex rel. Willard v. Humana Health Plan of Texas Inc., 336 F.3d 375, 379 (5th Cir. 2003).

## II.

### *A.*

The Louisiana Unfair Trade Practices and Consumer Protection Law (previously and still also commonly referred to as LUTPA) declares unlawful "[u]nfair methods of competition and unfair or

7

deceptive acts or practices in the conduct of any trade or commerce." La. R.S. § 51:1405(A). LUTPA affords a private cause of action to "[a]ny person who suffers any ascertainable loss of money or movable property . . . as a result of the use or employment by another person of an unfair or deceptive method, act or practice." Id. § 1409(A). If actual damages are awarded, the statute requires the Court to award "reasonable attorney fees and costs." Id. LUTPA also mandates an award of treble the actual damages sustained "[i]f the court finds the unfair or deceptive method, act, or practice was knowingly used, after being put on notice by the attorney general." Id.

Conspicuously absent from the statute is an enumeration of the types of conduct that constitute an "unfair or deceptive method, act, or practice." Thus, courts make this determination on a "case-by-case basis." Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc., 35 So. 3d 1053, 1059 (La. 2010). To prove that a trade practice is "unfair," Louisiana courts have repeatedly held, "the plaintiff must show the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." Id. (internal citations omitted). Louisiana courts have described a trade practice as "'deceptive' for purposes of LUTPA when it amounts to fraud, deceit, or misrepresentation." Mixon v. Iberia Surgical, L.L.C., 956 So. 2d 76, 80 (La. App. 3 Cir. 2007).

8

The Louisiana Supreme Court has emphasized that "the range of prohibited practices under LUTPA is extremely narrow;" it reaches "only egregious actions involving elements of fraud, deception, or other unethical conduct." Cheramie Servs., 35 So. 3d at 1060. As another Section of this Court has observed, "LUTPA is concerned with intentional deception." See Cargill, Inc. v. Degesch America, Inc., 875 F. Supp. 2d 667, 677 (E.D. La. 2012). Thus, "mere negligence" is not prohibited by the Act. See Turner v. Purina Mills, Inc., 989 F.2d 1419, 1422 (5th Cir. 1993). Nor does the statute "prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions." Reingold v. Swiftships, Inc., 126 F.3d 645, 653 (5th Cir. 1997).

*B.*

With respect to unfair and deceptive trade practices, in addition to incorporating the facts pleaded in support of its "wrongful acts" and "conversion" claims, F&M alleges:

> 103. ECapital's conduct constitutes unfair competition and unfair or deceptive acts or practices in the conduct of trade or commerce, including but not limited to conversion of F&M's property, an attempt to force payment by F&M of a debt not owed by F&M even though ECapital claimed (or knew) that the debt was instead owed by OMC and knew that Louisiana law did not allow ECapital to use self-help tactics to collect the debt.
>
> 104. ECapital's actions have been immoral, unethical, oppressive, unscrupulous, and substantially injurious to F&M.

> 105. By its conduct, ECapital has violated the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. §§ 51:1401 *et seq.*
>
> 106. As a direct and proximate result of ECapital's unfair competition and unfair or deceptive acts or practices, F&M has suffered an ascertainable loss of money and property, for which ECapital is liable. . . .

ECapital submits that LUTPA has no place in this case, which involves nothing more than a dispute concerning the validity of liens in movable property. ECapital maintains that it is entitled to exercise its rights as a secured creditor over the Manitowoc cranes and has done so, in good faith, by asking the Court for a writ of seizure and sale and by permitting F&M reasonable access to the equipment. Because F&M has pled nothing that ECapital did to F&M, outside of the dispute regarding the validity of the lien, ECapital contends that there is no basis for any unfair trade practice claim.

F&M counters that its factual allegations – that ECapital illegally seized F&M's property as an impermissible form of self-help – fall squarely within the scope of LUTPA. For support, F&M invokes <u>Pelican Point Operations, LLC v. Carroll Childers Co.</u>, 807 So. 2d 1171 (La. App. 1 Cir. 2002), in which the Louisiana First Circuit Court of Appeal upheld a creditor's liability under LUTPA. In <u>Pelican Point</u>, the Louisiana First Circuit characterized a creditor's act of disabling a golf course's irrigation system in

an attempt to seek payment for the equipment as an illegal form of self-help:

> Childers continued an attempt to force payment on a debt Pelican Point did not owe and to impose other conditions on Pelican Point after it knew Pelican Point was not liable for the debt and knew Louisiana law did not allow it to employ self-help tactics to collect the debt.

Id. at 1178. F&M contends that it has stated a plausible claim under LUTPA by alleging that ECapital, a creditor like Childers, has engaged in illegal self-help tactics to collect a debt that it knows F&M does not owe.

ECapital responds that F&M's reliance on Pelican Point is misplaced. Narrowly construing the First Circuit's holding, ECapital submits that Pelican Point concerns a trespass onto a golf course to recover a debt. Notably absent from F&M's counterclaim is an allegation that ECapital "invaded the premises" of another. To the contrary, ECapital notes, F&M's counterclaim acknowledges that OMC or OMR was in possession of the cranes at the time they were moved and does not allege that the cranes were moved without OMC or OMR's consent. ECapital also emphasizes that Pelican Point does not address the rights of a third-party purchaser of collateral against a secured creditor.

In an attempt to direct the Court to more applicable jurisprudence, ECapital invokes Levine v. First National Bank of Commerce, 845 So. 2d 1189 (La. App. 5 Cir. 2003). In Levine, the Louisiana Fifth Circuit Court of Appeal granted a bank's exception

of no right of action with respect to LUTPA and wrongful seizure claims asserted by the transferees of a bond for deed contract. Id. As for the LUTPA claim, the Louisiana Fifth Circuit held that "the transferees of a bond for deed are not among the protected persons" under LUTPA, which gives rise to "a personal right of action applying only to direct consumers or to business competitors." Id. at 1193. The Louisiana Fifth Circuit also rejected the transferees' wrongful seizure claim on the ground that the bank owed no duty to the transferees, who were neither judgment debtors, nor owners of the property seized. See id. at 1193-94. ECapital submits that, because F&M acquired the Manitowoc cranes after ECapital was granted security rights in them, F&M's "complaints that ECapital's exercise of secured creditor rights violates LUTPA fail, just as the third party acquirer's LUTPA claims failed in Levine."

The Court disagrees. First, to the extent Levine holds that a third-party purchaser has no right of action against a secured creditor under LUTPA, that holding was based on the premise that only consumers and competitors have standing under the statute. See Levine, 845 So. 2d at 1193. That premise was subsequently rejected by the Louisiana Supreme Court. See Cheramie Serv., Inc. v. Shell Deepwater Prod., Inc., 35 So. 3d 1053, 1058 (La. 2010) ("LUTPA is available to plaintiffs other than business competitors and consumers."). Moreover, in rejecting the wrongful seizure

claim, the Levine court reasoned that the bank owed no duty to the transferees - "with whom it had no legal relationship" - and that "[d]amages for illegal seizure cannot belong to the [transferees], who did not own the property seized." Id. at 1194. But in this case, F&M consistently alleges in its counterclaim that it owns the property that ECapital seized. Finally, the validity of ECapital's security interests has not yet been litigated, and Louisiana jurisprudence recognizes that a *wrongful* seizure constitutes an unfair trade practice within the meaning of LUTPA. See In re Walker, 180 B.R. 834, 850-51 (W.D. La. Bankr. 1995) ("In cases involving wrongful repossession or wrongful seizure, it has been held by Louisiana courts that such actions come under the purview of [LUTPA].") (citing Bryant v. Sears Consumer Fin. Corp., 617 So. 2d 1191, 1196 (La. App. 3 Cir. 1993); Jones v. Petty, 577 So. 2d 821 (La. App. 2 Cir. 1991); Cook v. Spillers, 574 So. 2d 464 (La. App. 2 Cir. 1991); Moore v. Goodyear Tire & Rubber Co., 364 So. 2d 630 (La. App. 2 Cir. 1978)).

Mindful of these principles, the Court finds that F&M has plausibly stated a claim for unfair trade practices under LUTPA. While disputing the validity of ECapital's purported security interests in the cranes, F&M alleges that ECapital intentionally seized the cranes, failed to maintain them, and prevented F&M from exercising its ownership rights with respect to the cranes. When accepted as true and viewed in a light most favorable to F&M, the

13

allegations of the counterclaim do rise to the level of egregious conduct required to state a claim under LUTPA.[2]

*C.*

ECapital also urges the Court to dismiss F&M's claim for treble damages, contending that F&M does not meet LUTPA's requirements for such an award.

With respect to treble damages, LUTPA provides: "If the court finds the unfair or deceptive method, act, or practice was knowingly used, *after being put on notice by the attorney general*, the court shall award three times the actual damages sustained." La. R.S. § 51:1409(A) (emphasis added). ECapital submits that, because F&M does not allege in its counterclaim that the attorney general provided notice to ECapital regarding an unfair or deceptive trade practice, F&M's treble damages claim necessarily fails. F&M counters that dismissal of its treble damages claim is premature because it has since provided notice of its LUTPA claim to the attorney general and expects the attorney general to issue a formal notification to ECapital. When that occurs, F&M contends,

---

[2] Of course, if it is established at the summary judgment or trial phase of these proceedings that ECapital held a valid security interest in the cranes and complied with the requirements of the Uniform Commercial Code, no LUTPA claim would lie. See La. R.S. § 10:9-609(a) ("After default, a secured party may take possession of the collateral only: (1) after the debtor's abandonment, or the debtor's surrender to the secured party, of the collateral; (2) with the debtor's consent given after or in contemplation of default; (3) pursuant to judicial process; or (4) in those cases expressly provided by law other than this Chapter.").

14

the procedural prerequisites to a treble damages claim will be satisfied.

Notably, another Section of this Court has squarely rejected F&M's prematurity argument. See Andretti Sports Mktg. La., LLC v. NOLA Motorsports Host Comm., Inc., 147 F. Supp. 3d 537, 572 (E.D. La. 2015) ("Although Andretti asserts that it provided notice of its LUTPA claim to the attorney general, Andretti does not allege anywhere in its complaint or in any amended complaint that the attorney general has put the defendants on notice of a LUTPA violation, as required by the statute in order to be entitled to treble damages. Accordingly, the Court finds that Andretti has failed to state a claim for treble damages."). Because F&M, like the plaintiff in Andretti, fails to allege in its counterclaim that the attorney general has put ECapital on notice of a LUTPA violation, F&M fails to state a claim for treble damages under LUTPA. See id.

Accordingly, for the foregoing reasons, IT IS ORDERED: that ECapital's motion to dismiss is hereby GRANTED in part, as to F&M's claim for treble damages, and DENIED in part, as to F&M's claim for actual damages under LUTPA.[3]

---

[3] All counsel are emphatically admonished to become fully versed in the mandate of 28 U.S.C. § 1927.

New Orleans, Louisiana, July 23, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE