UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


F&M MAFCO, INC.                                         CIVIL ACTION


v.                                                     NO. 18-5621


OCEAN MARINE CONTRACTORS, LLC, ET AL.          SECTION "F"


ORDER AND REASONS

Before the Court are three motions: (1) ECapital's motion for
summary judgment enforcing and recognizing its alleged security
rights in three industrial cranes; (2) F&M's motion for summary
judgment dismissing ECapital's claims; and (3) ECapital's motion
for partial summary judgment precluding F&M from contending that
it bought one crane from Ocean Marine Rentals. For the reasons
that follow, ECapital's motion for summary judgment enforcing and
recognizing its alleged security rights is GRANTED IN PART as to
the cranes bearing serial numbers 41322 and 41468 and DENIED IN
PART as to the crane bearing serial number 41608; F&M's motion for
summary judgment is DENIED; and ECapital's motion for partial
summary judgment is DENIED.

**Background**

At the heart of this security-rights dispute are three industrial cranes perched atop a Terrebonne Parish bayou. Two companies claim rights in the cranes: one as an innocent buyer, the other as a secured creditor. The cross-motions before the Court present the question whether the secured creditor's claim defeats the innocent buyer's.

F&M provides heavy-rigging packages, cranes, on-site tooling, and welding systems. Ocean Marine Contractors and Ocean Marine Rentals are family-owned shipbuilding companies. F&M bought three industrial cranes from the Ocean Marine entities, and ECapital claims security rights in all of them.

The case begins with a debt. In 2010, Regions Bank extended over $1 million in credit to Ocean Marine Contractors. As security, Ocean Marine Contractors granted Regions an interest in certain collateral, including "any and all of [Ocean Marine Contractor's] now owned and hereafter acquired equipment[.]" This commercial security agreement contained continuing-security and cross-collateralization provisions.

In 2015, F&M bought three industrial cranes from the Ocean Marine entities. The parties agree that Ocean Marine Contractors sold two of them; they dispute which entity sold the third — the

crane bearing serial number 41608.[1] The dispute is understandable. The bill of sale for the third crane is printed on Ocean Marine *Rentals* letterhead, but it describes the crane as an Ocean Marine *Contractors* item.

As part of the sale, F&M leased two of the cranes back to Ocean Marine Contractors. But Ocean Marine Contractors failed to pay rent. So, F&M sued in Ohio state court. In its complaint, F&M said that it bought all three cranes from "OMC, LLC," shorthand for Ocean Marine Contractors. Based on this allegation and others, F&M obtained a default judgment against the Ocean Marine entities for over $770,000, plus interest and costs. Satisfaction did not follow; this suit did.

F&M sued the Ocean Marine entities in this Court to enforce the Ohio judgment. The Court entered summary judgment in F&M's favor, found that F&M was entitled to recognition and enforcement of the Ohio judgment, and entered a Federal Rule of Civil Procedure 54(b) partial final judgment so that F&M could "avail itself of enforcement remedies."

Enter ECapital. Following the Court's entry of a partial final judgment in F&M's favor, ECapital sought (and later obtained) leave to intervene to protect its alleged security rights in the cranes.

---

[1] The parties refer to the crane bearing serial number 41608 as the "third crane," and the Court does the same.

In its intervenor complaint, ECapital says it is the successor-in-interest to Regions Bank's rights under the commercial security agreement with Ocean Marine Contractors. ECapital says those security rights cover the cranes F&M bought from the Ocean Marine entities. ECapital seeks recognition of its alleged security rights and an order directing the cranes to be seized and sold.

In response, F&M counterclaimed against ECapital for (1) "wrongful acts," (2) conversion, and (3) violations of the Louisiana Unfair and Deceptive Trade Practices Act (LUTPA), LA. REV. STAT. § 51:1405.[2] F&M says ECapital "wrongly seized" its cranes and moved them from accessible land controlled by the Ocean Marine entities to inaccessible land controlled by ECapital. F&M also says the cranes have "suffered considerable damages due to neglect and lack of maintenance" since ECapital seized them.

Now, ECapital and F&M cross-move for summary judgment on the validity of ECapital's security rights. ECapital moves, in the alternative, for partial summary judgment precluding F&M from contending that it bought the third crane from Ocean Marine Rentals.

---

[2] The Court dismissed F&M's LUTPA treble-damages claim on ECapital's Rule 12(b)(6) motion. See Order and Reasons of July 23, 2019.

I.

Summary judgment is proper if the record discloses no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit." Id. at 248.

If the non-movant will bear the burden of proof at trial, "the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." In re La. Crawfish Producers, 852 F.3d 456, 462 (5th Cir. 2017) (citation omitted).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See Anderson, 477 U.S. at 248. Nor do "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation[.]" Brown v. City of Houston, Tex., 337 F.3d 539, 541 (5th Cir. 2003). Ultimately, to avoid summary judgment, the non-movant "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 387 (5th Cir. 2007).

In deciding whether a fact issue exists, the Court views the facts and draws all reasonable inferences in the light most favorable to the non-movant. See Midwest Feeders, Inc. v. Bank of Franklin, 886 F.3d 507, 513 (5th Cir. 2018). The Court "resolve[s] factual controversies in favor of the nonmoving party," but "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).

On cross-motions for summary judgment, the Court views each motion separately and asks, as to each, whether the movant has met the Rule 56(a) standard. See Shaw Constructors v. ICF Kaiser Engr's, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 1998)).

## II.

Jurisdiction is based on diversity, so the Court applies Louisiana "substantive" law. See Boyett v. Redland Ins. Co., 741 F.3d 604, 607 (5th Cir. 2014) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)). Because Louisiana choice-of-law rules are "substantive," the Court applies them here. See Weber v. PACT XPP Tech., AG, 811 F.3d 758, 770 (5th Cir. 2016) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941)).

The first step under Louisiana choice-of-law rules is determining whether the laws of two or more states conflict. <u>Lonzo v. Lonzo</u>, 17-0549, p. 12 (La. App. 4 Cir. 11/15/17); 231 So. 3d 957, 966. If they do not, the Court applies forum law; if they do, further analysis is required. <u>See</u> <u>Am. Elec. Power Co. v. Affiliated FM Ins. Co.</u>, 556 F.3d 282, 285 n.2 (5th Cir. 2009). The parties here have not identified a conflict, and the Court has not found one. Accordingly, the Court applies Louisiana substantive law and turns to the cross-motions for summary judgment.

### III.

In the first cross-motion, ECapital seeks summary judgment recognizing and enforcing its alleged security interests in the cranes. The Court considers the first and second cranes before turning to the third.

### A.

ECapital says it has enforceable security interests in the first and second cranes. Whether it does turns on the secured-transaction provisions of Louisiana's Uniform Commercial Code. <u>See</u> LA. REV. STAT. § 10:9-101. In Louisiana, a security interest is enforceable against the debtor and third parties with respect to the collateral if three requirements are met: (1) value has been given, (2) the debtor has rights in the collateral or the power to

transfer rights in the collateral to a secured party, and (3) the debtor has authenticated a security agreement that provides a description of the collateral. LA. REV. STAT. § 10:9-203(b).

The first requirement is met here because ECapital's predecessor-in-interest, Regions Bank, "gave value" for the security interests by loaning Ocean Marine Contractors over $1 million. The second requirement is also met: the Ocean Marine Contractors bill of sale for the cranes establishes that Ocean Marine Contractors had the "power to transfer rights" in them.[3] The third requirement requires deeper analysis.

F&M contends that the third requirement is not met because the cranes are not "collateral" in that they are inadequately described in the security agreement. ECapital rejoins that the agreement adequately describes the cranes as collateral by reference to categories such as "equipment." The Court agrees.

The commercial security agreement defines "collateral" to include "any and all of [Ocean Marine Contractor's] now owned and hereafter acquired equipment, machinery, furniture, furnishings

---

[3] F&M contends that ECapital fails to show that Ocean Marine Contractor owned any of the cranes. But "ownership" is not the relevant legal standard. ECapital need only show that Ocean Marine Contractors "ha[d] rights in the collateral or the power to transfer rights in the collateral to a secured party." LA. REV. STAT. § 10:9-203(b).

and fixtures of every type and description[.]" It is beyond dispute that a crane qualifies as "equipment" and "machinery."

"Equipment" means "something with which a person, organization, or thing is equipped." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 602 (5th ed. 2016).[4] One is "equipped" if "suppl[ied] with necessities such as tools or provisions." Id. For purposes of summary judgment, it is undisputed that the Ocean Marine entities were "equipped" with the cranes in that they were "suppl[ied] with" them. Id.

A "machine" is "[a] device consisting of fixed and moving parts that modifies mechanical energy and transmits it in a more useful form," and "machinery" is such devices "considered as a group." Id. at 1050-51. A crane is a "machine" because it consists of "fixed and moving parts" that harness mechanical energy to raise and lower heavy weights. Id. A group of cranes, then, is "machinery."

Peering past plain language, F&M contends that the cranes are not "collateral" because they are not specifically identified in the agreement. But F&M cites no authority to support the

_____

[4] A Justice of the United States Supreme Court and a leading lexicographer have praised the American Heritage Dictionary of the English Language as among "the most useful and authoritative for the English language" for the period of 2001 to the present. *See* Antonin Scalia & Bryan A. Garner, *A Note on the Use of Dictionaries*, 16 Green Bag 2d 419, 423, 427-28 (2013).

proposition that cranes must be "mentioned as items separate and distinct," and the Court has found none.[5] Louisiana law merely requires that a security agreement "provide[] a description of the collateral[.]" LA. REV. STAT. § 10:9-203(b)(3)(A). A description suffices "if it reasonably identifies what is described." LA. REV. STAT. § 10:9-108(a). For example, "a description of collateral reasonably identifies the collateral if it identifies the collateral by . . . category." LA. REV. STAT. § 10:9-108(b)(2). Here, the commercial security agreement "reasonably identifies" the cranes as collateral because it identifies them by category, as "equipment" and "machinery." Id. These cranes are adequately described, and the third statutory requirement is met. See LA. REV. STAT. § 10:9-203(b).

Accordingly, ECapital offers summary-judgment evidence to satisfy each requirement of LA. REV. STAT. § 10:9-203(b) with respect to the cranes bearing serial numbers 41322 and 41468. ECapital has enforceable security interests in both. See LA. REV. STAT. § 10:9-203(b). Because ECapital did not authorize the disposition of those

---

[5] F&M instead invokes three opinions that allegedly establish that cranes are "usually" mentioned separately from "equipment" in the case literature. See Belle Pass Terminal, Inc. v. Jolin, Inc., 2001-0149 (La. 10/16/01); 800 So. 2d 762; HWW Enters., Inc. v. Env'tal Treatment Team, LLC, 2006-891 (La. App. 3d Cir. 2/28/07); 952 So. 2d 837; Samedan Oil Corp. v. Ultra Fabricators, Inc., 98-1516 (La. App. 3d Cir. 3/3/9); 737 So. 2d 846. These opinions do not contradict the commonsense command of the English language: A crane is both "equipment" and "machinery" in these circumstances.

interests when Ocean Marine Contractors sold these cranes to F&M, the interests survived the sale.[6] See La. Rev. Stat. § 10:9-315(a). The Court therefore finds that the record discloses no genuine dispute as to any material fact regarding ECapital's security rights in these two cranes, and ECapital is entitled to judgment as a matter of law recognizing and enforcing those rights.[7]

B.

ECapital next contends that it has an enforceable security interest in the third crane. ECapital says that crane qualifies as "collateral" under the commercial security agreement because F&M bought it from Ocean Marine Contractors. F&M counters that the third crane cannot be "collateral" because it was purchased from Ocean Marine *Rentals* and, accordingly, is not subject to the

---

[6] F&M asks the Court to reject ECapital's security-rights claims under the unclean hands doctrine. That doctrine is a defense only to equitable claims. See H&E Equip. Servs., Inc. v. Sugar & Power Int'l, LLC, 2016-1070, p. 6 (La. App. 1st Cir. 2/17/17); 215 So. 3d 446, 450. ECapital's claims are legal —— not equitable. So, the unclean hands doctrine does not apply.

[7] F&M urges the Court to reject ECapital's security interest on the additional grounds that (1) F&M is a bona fide purchaser of the cranes; (2) ECapital's predecessor-in-interest, GI-47 Gibson, waived any security interest in the cranes; and (3) the amounts ECapital has already received constitute an accord and satisfaction of the Ocean Marine Contractors debt. These arguments fail as a matter of law for the reasons explained in section IV of this Order and Reasons.

commercial security agreement between Ocean Marine *Contractors* and Regions Bank.

Each side offers summary-judgment evidence to support its position. To establish that it bought the third crane from Ocean Marine Rentals, F&M invokes the declaration of its credit manager, Randy Snyder, as well as a bill of sale on Ocean Marine Rentals letterhead. ECapital also invokes the bill of sale, noting (correctly) that the crane is described as an Ocean Marine Contractors item.

The record is muddled. On these submissions, the Court finds genuine disputes of material fact on the questions whether (1) the third crane is "collateral" under the commercial security agreement and (2) Ocean Marine Contractors had rights in the third crane or the power to transfer rights in it. <u>See</u> LA. REV. STAT. § 10:9-203(b). The Court therefore denies ECapital's motion for summary judgment as to the third crane and turns to F&M's summary-judgment motion.

IV.

In the second cross-motion, F&M seeks summary judgment dismissing ECapital's claims on three grounds: (1) ECapital lacks rights in the cranes under the commercial security agreement; (2) ECapital's predecessor-in-interest "waived" any security rights in

the cranes; and (3) the debt ECapital bought from Ocean Marine Contractors has been satisfied.

A.

For its first argument, F&M says that ECapital lacks a security-rights claim to the cranes because: (1) Ocean Marine Contractors never paid for or possessed them, (2) F&M is a bona fide purchaser of them, and (3) F&M was subrogated to MidSouth Bank's superior rights in them.

1.

F&M contends that ECapital lacks rights in the cranes because the alleged grantor of security rights, Ocean Marine Contractors, never paid for or possessed the cranes. Although F&M does not use the appropriate statutory language, it appears to contend that the debtor, Ocean Marine Contractors, lacked "rights in the collateral or the power to transfer rights in the collateral to a secured party." LA. REV. STAT. § 10:9-203(b)(2).

As to the first and second cranes, F&M's contention lacks merit. The bills of sale for these cranes establish that they were Ocean Marine Contractors' property; so, it is beyond dispute that Ocean Marine Contractors had "rights" in them. LA. REV. STAT. § 10:9-203(b)(2). Because Ocean Marine Contractors had "rights" in the first and second cranes, the security interest in those cranes

13

is enforceable against third parties, like F&M. See LA. REV. STAT. § 10:9-203(b).

The third crane is more complicated. As explained in section III(B) of this Order and Reasons, material factual disputes preclude a summary-judgment ruling on Ocean Marine Contractors' rights in the third crane.

2.

F&M next contends that it has superior rights in the cranes because it is a bona fide purchaser of them.[8] The contention clashes with Louisiana secured-transaction law. Consider Chapter 9 of Title 10 of the Louisiana Revised Statutes. See LA. REV. STAT. §§ 10:9-101 — 10:9-809. Chapter 9 instructs that "a security interest continues in collateral notwithstanding sale," "[e]xcept as otherwise provided in this Chapter." LA. REV. STAT. § 10:9-315(a). Because F&M fails to show how and where the bona fide purchaser

---

[8] In support of its bona fide purchaser argument, F&M invokes three aged opinions. See Pecora v. James 150 So. 2d 90 (La. Ct. App. 4th Cir. 1963); Bartlette v. Michel Bros., 4 La. App. 654 (1925); Baldwin v. Sewell, 23 La. Ann. 444 (1871). Because these opinions pre-date Louisiana's adoption of Article 9, the Court finds them unhelpful. See generally First Nat. Bank of Boston v. Beckwith Machinery Co., 94-2065, p. 1151 (La. 2/20/95); 650 So. 2d 1148, 1151 (noting that Louisiana adopted U.C.C. Article 9 as Chapter 9 of the Louisiana Commercial Laws, effective January 1, 1990).

doctrine is "provided in" Chapter 9, F&M has not shown that the doctrine applies here.[9] Id.

### 3.

F&M next contends that it was subrogated to MidSouth Bank's allegedly superior rights in the cranes when it paid off MidSouth Bank's loan to Ocean Marine Contractors. That loan was secured by a purchase money security interest. A perfected purchase money security interest generally has priority over a conflicting security interest in the same goods or inventory. LA. REV. STAT. § 10:9-324(a)-(b). F&M says it "acceded to" the perfected purchase money security interest when it paid off MidSouth Bank's loan. The Court disagrees.

A party "claiming a purchase-money security interest has the burden of establishing the extent to which the security interest is a purchase-money security interest." LA. REV. STAT. § 10:9-

---

[9] Even if the doctrine applied, it would fail here for lack of evidentiary support. Neither the declaration of Robert McKenna Jr., Executive Vice President of F&M, nor the declaration of Randy Snyder, one of F&M's credit managers, establishes that F&M lacked knowledge of the security interests ECapital seeks to enforce. True, Snyder attests that Ocean Marine Contractors and Ocean Marine Rentals said that the only lien on the cranes was a purchase money security interest held by MidSouth Bank. Snyder does not attest, however, that F&M was unaware of other security interests. See Matter of Samuels & Co., 526 F.2d 1238, 1243 (5th Cir. 1976) (en banc) ("Lack of knowledge of outstanding claims is necessary to the common law BFP.").

103(g). Because the financing statements supporting MidSouth Bank's purchase money security interest terminated in December 2015, any purchase money security interest would now be unperfected. See LA. REV. STAT. § 10:9-513(d). Accordingly, F&M has not met its burden of establishing a perfected purchase money security interest in the cranes.[10]

### B.

F&M next contends that ECapital's predecessor-in-interest, GI-47 Gibson, "waived" its security rights by allowing F&M to "exercise its rights as owner" of the cranes.

In Louisiana, waiver is "'the intentional relinquishment of a known right, power or privilege.'" Arceneaux v. Amstar Corp., 2010-2329, p. 18 (La. 7/1/11); 66 So. 3d 438, 450 (quoting Steptore v. Masco Const. Co., p. 4 93-2064 (La. 8/18/94); 643 So. 2d 1213, 1216). Waiver requires "an existing right, a knowledge of its existence[,] and an actual intention to relinquish it[,] or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." Id. at 450-51. Because waiver is an affirmative defense, the party asserting

---

[10] F&M's subrogation argument fails for the same reason. See, e.g., Pelican Homestead and Sav. Ass'n v. Sec. First Nat. Bank, 532 So. 2d 397 (La. Ct. App. 3d Cir. 1988) (holding that the rights a subrogee obtained by paying a superior creditor extinguished upon termination of the superior creditor's rights).

waiver bears the burden of proving it. See Gunderson v. F.A. Richard & Assocs., 2009-1498, p. 16 (La. App. 3d Cir. 6/30/10); 44 So. 3d 779, 790.

F&M does not acknowledge, or offer summary-judgment evidence establishing, the elements of waiver. Its contention fails for that reason alone.

The contention is forfeited, too. In its initial brief, F&M invoked only a January 11, 2017 letter that it sent to GI-47 Gibson. It did not invoke GI-47 Gibson's response to the letter, or any other document that would show GI-47 Gibson's "actual intention to relinquish" its security interest in the cranes. Arceneaux, 66 So. 3d at 450. On reply, F&M urges —— for the first time —— that the affidavits of Randy Snyder and Bob McKenna, as well as the repair records for the cranes, prove waiver. The argument is forfeited. See Conway v. United States, 647 F.3d 228, 237 n.8 (5th Cir. 2011) (citing Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993)).

Forfeiture and inadequate briefing aside, the "waiver" argument fails on the merits. Nothing in the proffered affidavits or repair records establishes that GI-47 "actual[ly] inten[ded] to relinquish" its security rights or engaged in conduct "so inconsistent with the intent to enforce the right[s] as to induce a reasonable belief that it has been relinquished." Arceneaux, 66 So. 3d at 450-51.

F&M advances a related argument: that GI-47 impliedly authorized the disposition of its security rights. "Except as otherwise provided in [Chapter 9]" of Title 10 of the Louisiana Revised Statutes, a security interest in collateral survives sale of the collateral, "unless the secured party authorized the disposition free of the security interest." LA. REV. STAT. § 10:9-315(a). F&M offers no summary-judgment evidence that GI-47 directly authorized the disposition of the cranes free of its security interest. It appears to contend, however, that GI-47 impliedly authorized the disposition by allowing it to "inspect, maintain, and repair the cranes." Not so.

Section 9-315(a) is generally "uniform with revised U.C.C. Article 9[.]" LA. REV. STAT. § 10:9-315, Official Revision Comment (2001). The basis for U.C.C. § 9-315(a) "is that a security interest would be meaningless if the secured party could not reach the collateral in the hands of a third party . . . when the debtor disposes of it without authorization. William D. Hawkland, Frederick H. Miller & Neil B. Cohen, 9B HAWKLAND U.C.C. SERIES § 9-315:1 (2008). "Because § 9-315(a)(1) does not require a secured party to take action to preserve its security interest, inaction alone may not lead to a finding of implied authorization." In re Jersey Tractor Trailer Training, Inc., 580 F.3d 147, 155 (3d Cir. 2009). Acts of "[i]mplied authorization . . . must unequivocally

demonstrate an intent to waive the security interest." 11 Part I Anderson U.C.C. § 9-315:7 [Rev] (3d. ed.).

Here, F&M has not offered summary-judgment evidence "unequivocally demonstrat[ing]" GI-47 Gibson's intent to waive its security interest in the cranes. Id. So, F&M's implied-authorization argument fails.

C.

F&M next contends that it is entitled to summary judgment because ECapital's debt "has been satisfied." ECapital's debt has been "satisfied," F&M continues, because ECapital has obtained property valued at 3-4 times the price it paid for Ocean Marine Contractors' distressed debt. F&M says this constitutes an accord and satisfaction.

"The doctrine of accord and satisfaction estops a creditor from suing on a compromised debt." River Bend Capital, LLC v. Lloyd's of London, 2010-1317, p. 3 (La. App. 4th Cir. 4/13/11); 63 So. 3d 1092, 1094 (citing Anesthesia East v. Bares, 594 So. 2d 1085 (La. Ct. App. 4th Cir. 1992). The party seeking to prove an accord and satisfaction must establish three elements: (1) an unliquidated or disputed claim between debtor and creditor; (2) that the debtor tendered a check for less than the sum claimed by the creditor; and (3) that the creditor accepted the tender by

negotiating the check. See River Bend Capital, 63 So. 3d at 1095 (citing Anesthesia East, 594 So. 2d at 1087).

F&M cannot show an accord and satisfaction of Ocean Marine Contractors' debt to ECapital. The partial dation en paiment between ECapital and Ocean Marine Contractors acknowledges Ocean Marine Contractors' remaining $698,530.39 debt; it says that it is "made and accepted for and in consideration of the *partial reduction* of the Indebtedness." (emphasis added). Because this *partial* dation was obviously not intended to *fully* satisfy the Ocean Marine Contractors debt, the contention lacks merit.

Perhaps anticipating the failure of its accord-and-satisfaction argument, F&M urges the Court to prohibit ECapital from "further recover[ing]" on unjust-enrichment grounds. The Court declines.

Under Louisiana law, unjust enrichment has five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment, (4) an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) no other remedy at law. City of New Orleans v. BellSouth Telecomm., Inc., 690 F.3d 312, 326 (5th Cir. 2012) (citing SMP Sales Mgmt., Inc. v. Fleet Credit Corp., 960 F.2d 557, 560 (5th Cir. 1992)). "'Courts may resort to equity only in cases of unjust enrichment for which there is no justification in law or

contract.'" <u>SMP Sales Mgmt.</u>, 960 F.2d at 560 (quoting <u>Carter v.</u> <u>Flanagan</u>, 455 So. 2d 689, 692 (La. Ct. App. 2d Cir. 1984)).

Here, a contract justifies ECapital's actions as a secured creditor of Ocean Marine Contractors. Accordingly, unjust enrichment does not apply. <u>See</u> <u>SMP Sales Mgmt.</u>, 960 F.2d at 560.

V.

In the third and final summary-judgment motion, ECapital seeks an order judicially estopping F&M from contending that it bought the third crane from Ocean Marine Rentals.

A.

ECapital contends that F&M should be judicially estopped from claiming that it bought the third crane from Ocean Marine *Rentals* because, in the Ohio litigation, it alleged in its complaint that it bought all three cranes from Ocean Marine *Contractors*. ECapital speculates that F&M changed its position in this litigation to end-run ECapital's security interest in Ocean Marine Contractors' equipment. F&M denies seeking a tactical advantage and describes the allegation as "ostensibly errant."

B.

Judicial estoppel is "an equitable doctrine that prevents a party from gaining an advantage by asserting contradictory positions in different proceedings." <u>Barrios v. Centaur, L.L.C.,</u>

942 F.3d 670, 678 & n.7 (5th Cir. 2019) (citing New Hampshire v. Maine, 532 U.S. 742, 749 (2001)).

A court may apply judicial estoppel if (1) the estopped party's position is "clearly inconsistent" with its previous one; and (2) the estopped party convinced the court to "accept" the previous position. Barrios, 942 F.3d at 678 & n.7 (citing Gabarick v. Laurin Mar. (Am.) Inc., 753 F.3d 550, 553 (5th Cir. 2014)). Courts should also consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire, 532 U.S. at 751. Because the doctrine "is intended to prevent improper use of judicial machinery," it is "within the court's discretion to apply." Id. at 750.

The first requirement is met here. F&M takes the position in this litigation that it bought the third crane from Ocean Marine Rentals. In the Ohio litigation, however, it alleged in its complaint that it bought all three cranes from Ocean Marine Contractors. These positions are "clearly inconsistent." Gabarick, 753 F.3d at 553; see also Afram Carriers Inc. v. Moeykens, 145 F.3d 298, 304 n.12 (5th Cir. 2003) (assuming, without deciding, "that representations that a plaintiff makes in its complaint are subject to the doctrine of judicial estoppel").

The second requirement is also met. F&M obtained a default judgment from the Ohio state court based, in part, on its

allegation that it bought all three cranes from Ocean Marine Contractors. That court necessarily "accepted" F&M's position when it entered a default judgment in F&M Mafco's favor. See Newfield Exploration Co. v. Applied Drilling Tech., Inc., No. 01-CV-2746, 2003 WL 23253, at *4 (E.D. La. Jan. 2, 2003).

Although ECapital has established the requirements of judicial estoppel, it has not convinced the Court to exercise its discretion to apply the doctrine. See U.S. ex rel. Long v. GSDMIdea City, L.L.C., 798 F.3d 265, 271 (5th Cir. 2015) ("Because judicial estoppel is equitable in nature, trial courts are not required to apply it in every instance that they determine its elements have been met."); Pegg v. Steel Dynamics, Inc., No. 1:16-CV-241, 2018 WL 1247874, at *4 (N.D. Miss. Mar. 9, 2018) (declining to apply judicial estoppel after finding its elements met).

ECapital does not explain how F&M "derive[d] an unfair advantage" from its change of position. Nor can it. In Ohio, the seller of the third crane was not at issue: F&M gained nothing by alleging that it bought all three cranes from Ocean Marine Contractors. The allegation is the product of neglect —— not gamesmanship. It strikes the Court as a simple mistake, which does not threaten "the integrity of the judicial process." Gabarick, 753 F.3d at 553 (citation omitted). Because applying judicial estoppel would not "achieve substantial justice" in these circumstances, the Court exercises its discretion not to apply the

doctrine. <u>Reed v. City of Arlington</u>, 650 F.3d 571, 576 (5th Cir. 2011) (citing <u>New Hampshire</u>, 532 U.S. at 750). Accordingly, the Court denies ECapital's alternative motion for partial summary judgment judicially estopping F&M from contending that it bought the third crane from Ocean Marine Rentals.

VI.

Accordingly, IT IS ORDERED that: (1) ECapital's motion for summary judgment enforcing and recognizing its security rights is GRANTED IN PART as to the cranes bearing serial numbers 41322 and 41468 and DENIED IN PART as to the crane bearing serial number 41608; (2) F&M's motion for summary judgment dismissing ECapital's security-rights claims is DENIED; and (3) ECapital's alternative motion for partial summary judgment precluding F&M from contending that it bought the third crane from Ocean Marine Rentals is DENIED.

New Orleans, Louisiana, January 22, 2020

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE